## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## NORTHERN DIVISION

DOROTHY ANDERSON and
DEMARQUION MERRILL, as Co-Personal
Representatives of the Estate of BOBBY
MERRILL, deceased

      Plaintiffs,

-v-

OFFICER JEFF MADAJ, individually,
OFFICER JUSTIN SEVERS, individually,
OFFICER BRIAN GUEST, individually, and
OFFICER STEVEN WIETECHA, individually,

      Defendants.

Case No.:13-11159
Hon.  Thomas L. Ludington
Mag. Hon. Charles E. Binder

---

### DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

NOW COME Defendants, by and through their attorneys, PLUNKETT COONEY, and for their Motion for Summary Judgment, hereby state as follows:

1.     Plaintiffs have filed this wrongful death action claiming that Defendants used excessive force against Plaintiffs' decedent in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

2.     Plaintiffs' "liberty" claim pursuant to the 14th Amendment fails because Plaintiffs' action is subject to a more specific constitutional provision, namely, the Fourth Amendment, and therefore cannot be brought pursuant to the more general provisions of the Fourteenth Amendment.

3.     Plaintiffs' claims also fail because Defendants are entitled to qualified immunity as a matter of law.

4.     Defendants are therefore entitled to summary judgment pursuant to Rule 12(c) and Rule 56 of the Federal Rules of Civil Procedure.

5.     On September 5, 2014, defense counsel contacted Plaintiffs' counsel and explained the nature of this Motion and its bases and sought, but was unable to obtain, concurrence.

WHEREFORE Defendants pray this Honorable Court GRANT their Motion for Summary Judgment, together with such additional relief as this Court deems just and proper.

<div style="margin-left:40%">

By:    /s/H. William Reising
       H. William Reising (P19343)
            Rhonda R. Stowers (P64083)
       Attorney for Defendants
       111 E. Court Street, Suite 1B
       Flint, MI   48502
       810-342-7001
       wreising@plunkettcooney.com

</div>

Dated:  9-19-14

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**NORTHERN DIVISION**

DOROTHY ANDERSON and
DEMARQUION MERRILL, as Co-Personal
Representatives of the Estate of BOBBY
MERRILL, deceased

     Plaintiffs,

-v-

OFFICER JEFF MADAJ, individually,
OFFICER JUSTIN SEVERS, individually,
OFFICER BRIAN GUEST, individually, and
OFFICER STEVEN WIETECHA, individually,

     Defendants.

Case No.:13-11159
Hon.  Thomas L. Ludington
Mag. Hon. Charles E. Binder

| | |
|---|---|
| GEOFFREY N. FIEGER (P30441) | H. William Reising (P19343) |
| JAMES J. HARRINGTON, IV (P65351) | Plunkett Cooney |
| Fieger, Fieger, Kenney, Giroux, Danzig | Attorney for Defendants |
| & Harrington, P.C. | 111 E. Court Street, Suite 1B |
| Attorneys for Plaintiffs | Flint, MI  48502 |
| 19390 W. Ten Mile Rd. | 810-342-7001 |
| Southfield, MI 48075 | |
| (248) 355-5555 | |
| g.fieger@fiegerlaw.com | |
| j.harrington@fiegerlaw.com | |

**BRIEF IN SUPPORT OF DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT**

i

## <u>QUESTIONS PRESENTED</u>

1.  Does Plaintiffs' 14th Amendment claim fail because a more specific constitutional amendment applies?

    Plaintiffs' Answer:      --

    Defendants' Answer:     yes


2.  Are Defendants entitled to qualified immunity?

    Plaintiffs' Answer:      --

    Defendants' Answer:     yes


3.  Is summary judgment therefore appropriate?

    Plaintiffs' Answer:      --

    Defendants' Answer:     yes

## CONTROLLING/APPROPRIATE AUTHORITIES

Albright v. Oliver,  510 U.S. 266 (1994).

Anderson v. Creighton, 483 U.S. 635 (1987).

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).

Ashcroft v. Iqbal, 556 U.S. 662 (2009).

Binay v. Bettendorf, 601 F.3d 640 (6th Cir. 2010).

Boyd v. Baeppler, 215 F.3d 594 (6th Cir. 2000).

Everson v. Leis, 556 F.3d 484 (6th Cir. 2009).

Graham v. Connor, 490 U.S. 386 (1989).

Hagans v. Franklin County Sheriff's Office, 695 F.3d 505 (6th Cir. 2012).

Phelps v. Coy, 286 F.3d 295 (6th Cir. 2002).

## INTRODUCTION

Plaintiffs claim that the force used by Defendants to arrest Plaintiffs' decedent was excessive in violation of the Fourth and Fourteenth Amendments to the United States Constitution. Plaintiffs' Fourteenth Amendment claim fails in light of the more applicable Fourth Amendment claim, and must accordingly be dismissed under Fed. R. Civ. P. 12(c). Defendants are also entitled to qualified immunity with regard to their actions and, consequently, summary judgment pursuant to Fed. R. Civ. P. 56. Judgment must accordingly enter in Defendants' favor.

## STATEMENT OF FACTS

For purposes of this Motion, only, Defendants will not contest the following, which might otherwise constitute disputed facts. Based upon the undisputed facts, Defendants are entitled to summary judgment as a matter of law.

On April 10, 2012, Officer Severs was on patrol near Washington and Hess Street on his way to a call when dispatch alerted that a male was in the street jumping in front of cars on Washington. (Exhibit 1, Severs' Dep., p. 47 & 50). Officer Severs proceeded down Washington and saw a black male walking southbound in the center lane. (Ex. 1, p. 55). This individual was Plaintiffs' decedent, Bobby Merrill, also known in the neighborhood as BJ. (Exhibit 2, Salazar's Dep., p. 5-6).

1

Officer Severs activated his lights and stopped his patrol car in the center lane, blocking traffic to protect the decedent[1], who was now walking toward Officer Severs with his hand in his left pocket.  (Ex. 1, p. 55, 59-60).  Officer Severs stepped out and repeatedly directed him to take his hand out of his pocket, but he failed to comply.[2]  (Ex. 1, p. 61).  Instead, he ran toward the intersection of Washington and Gilmore 20 to 25 feet away and attempted to get into the driver's side door of a SUV, with Officer Severs yelling for him to stop.  (Ex. 1, p. 13, 61-62).  He was unable to enter the vehicle and it drove off.  (Ex. 1, p. 64).  The decedent then jumped on the trunk of another car, forcing it to stop, and attempted to get into that car, also.  (Ex. 1, p. 64-65).

After warning decedent to get down on the ground or he would draw his weapon, Officer Severs pulled out his taser.[3]  (Ex. 1, p. 66-67).  He repeated his directions for the decedent to get on the ground, but the decedent just put one hand

---

[1] Mr. Salazar testified that the traffic on Washington gets very busy—"like a highway"—during the time of day when these events occurred.  (Ex. 2, p. 18).

[2] Witness Gabriel Salazar noted:  "You know, he didn't want to pay no attention to the officer.  He didn't—I don't think he even know the officer was present, you know."  (Ex. 2, p. 15).  Mr. Salazar further testified that the decedent "was hyped at the time, you know, high, like maybe drunk" and was "going hysterical" and "shouting…because he's all fired up."  (Ex. 2, p. 17, 23-24).

[3] Mr. Salazar testified he heard Officer Severs say, "I'm going to draw my weapon if you don't get your butt down on your hands and knees."  (Ex. 2, p. 20).  Officer Severs was attempting to avoid a physical confrontation, as the decedent was significantly larger than him.  (Ex. 1, p. 97).

2

up and continued his attempts to get into the car with the other hand, reaching

through the driver's window. (Ex. 1, p. 67; Exhibit 3, Taser video).

Officer Severs deployed his taser, but it had no effect and it did not appear

that the probes had made contact. (Ex. 1, p. 76-77; Ex. 3). After cycling the taser

twice with no results, Officer Severs loaded and deployed a second cartridge. (Ex.

1, p. 77-78, 80-81). This deployment likewise did not have the desired effect; the

decedent resumed his attempts to get in the car and ignored commands to get on

the ground. (Ex. 1, p. 82-83; Ex. 3).

The car drove off and the decedent walked toward Officer Severs and tried

the doors of the patrol vehicle, ignoring commands to get on the ground. (Ex. 3).

Officer Severs radioed for assistance as the decedent approached him again, then

ran from decedent, who began chasing him around the patrol car. (Ex. 1, p. 90-92;

Ex. 3).

Other patrol vehicles arrived[4], distracting decedent and providing Officer

Severs with the opportunity to load and deploy his final cartridge, again to no

effect. (Ex. 1, p. 93-94; Ex. 3). He advised the other officers that he was out of

cartridges and that his taser had no effect. (Ex. 1, p. 100; Ex. 5, p. 21-22, 30). As

---

[4] Officer Guest testified that he was en route the scene when he heard Officer
Severs' distressed call for assistance. (Exhibit 4, Guest's Dep., p. 60-61). Officer
Wietecha was on his way to another call, but rerouted after hearing the call for
backup, because he knew something was wrong by the nature of the request and
the tone of Officer Severs' voice. (Exhibit 5, Wietecha's Dep., p. 14-17).

3

decedent took a fighting stance, Officer Wietecha, and then Officer Guest,

deployed their tasers, finally succeeding in getting the decedent to the ground.

(Ex. 4, p. 65 & 68, 76; Ex. 5, p. 30-31).

Once there, he ignored verbal commands and resisted attempts to handcuff

him by flailing his arms and legs and tucking his arms underneath his body and

rolling. (Ex. 1, p. 110; Ex. 4, p. 78).  Officer Wietecha attempted verbal

commands followed by a second taser cycle, but it did not work.[5]  (Ex. 5, p. 66,

71).  He then administered a few compliance strikes with his baton, but it had no

effect, so he put it away and continued efforts to handcuff the decedent.  (Ex. 5, p.

71-72).  Officer Madaj, who had arrived on the scene just as the decedent was

going to the ground[6], also gave verbal directions and attempted drive stuns[7] with

his taser to gain compliance, without effect.  (Ex. 6, p. 138, 151-152, 154).

Ultimately, the officers were able to handcuff him, using two pairs of handcuffs

due to the decedent's size.  (Ex. 6, p. 166-167).

_____

[5] Officer Guest testified that he had determined Officer Wietecha's taser failed to make a good connection upon initial deployment, which is why he deployed his own taser to bring the decedent down.  (Ex. 4, p. 70 & 76).

[6] By the time Officer Madaj reached the decedent, he was kneeling and attempting to get up off the ground.  (Exhibit 6, Madaj's Dep., p. 147-148).  He was on his knees when Officer Madaj used a drive stun technique.  (Ex. 6, p. 152).  Witness Gabriel Salazar likewise testified that the decedent "wasn't laying down for them" and that "basically they were trying to maintain him."  (Ex. 2, p. 46-47).

[7] The taser did not operate on two of the four drive stuns.  (Ex. 4, p. 159-161).

The officers took a moment to assess the scene and called for an ambulance unit. (Ex. 1, p. 123; Ex. 6, p. 168-169). As they prepared to stand the decedent up, he flailed, kicked his feet, and grabbed at Officer Madaj's taser. (Ex. 1, p. 117; Ex. 2, p. 39-40; Ex. 4, p. 84-85; Ex. 5, p. 96; Ex. 6, p. 172-174). They first attempted to use the decedent's shoelaces to secure his feet, but it was not effective, so they looped a four-foot nylon rope around his legs and secured it to the decedent's handcuffs by a third pair of handcuffs. (Ex. 6, p. 175-180). They stood him up to walk him to a patrol car, but he refused to walk and had to be carried, dead-weight, to the vehicle. (Ex. 1, p. 129; Ex. 4, p. 91; Ex. 5, p. 114; Ex. 6, p. 190-194). Officer Wietecha moved the patrol car because it was in the middle of the road, while the other officers began crowd control, collecting evidence and directing traffic. (Ex. 4, p. 98-99; Ex. 5, p. 117-118; Ex. 6, p. 197).

Officer Madaj had just finished picking up the taser cartridges out of the road when the ambulance arrived, about two and a half minutes after the patrol car had been moved. (Ex. 6, p. 200-201). He went to the vehicle to notify the decedent, found him unresponsive, and called for the ambulance personnel. (Ex. 6, p. 202-203). Despite attempts at resuscitation, Bobby Merrill Jr. died of drug intoxication.[8] (Ex. 6, p. 203; Exhibit 7, Autopsy Report).

---

[8] He had earlier reported to Officer Madaj that he had smoked "20 rocks of crack cocaine." (Ex. 6, p. 185).

## MOTION STANDARDS

### A.    Rule 12(c)

The standard of review applicable to a motion for judgment on the pleadings under Rule 12(c) is the same standard applicable to a motion to dismiss under Rule 12(b)(6).  Ziegler v. IBP Hog Mkt., Inc., 249 F.3d 509, 511-12 (6th Cir. 2001); United Food & Commer. Workers Local 1099 v. City of Sidney, 364 F.3d 738, 746 (6th Cir. 2004).

A motion for dismissal based on Rule 12(b)(6) tests whether a cognizable claim has been pled.  Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir. 1988).  Courts are to construe complaints in the light most favorable to the non-movant and accept all factual allegations as true.  Bloch v. Ribar, 156 F.3d 673, 677 (6th Cir. 1998).  However, Courts are not required to accept as true legal conclusions or unwarranted factual inferences in the Complaint.  Mezibov v. Allen, 411 F.3d 712, 716 (6th Cir. 2005).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  In other words, "a complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory."  Id.  Additionally, where a Complaint "omits facts that if they existed, clearly would dominate the case, it

6

seems fair to assume that those facts did not exist." Scheid, 859 F.2d at 437. A complaint must be dismissed if fails to pled a legally cognizable claim.

**B.      Rule 56**

Summary judgment shall be granted "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must view the evidence in a light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. See United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

To create a genuine issue of material fact the non-movant must do more than present some evidence capable of being admitted at trial on a disputed issue. As the United States Supreme Court stated in Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), " [t]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the [non-movant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50 (citations omitted); See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

## ANALYSIS

Plaintiffs' Fourteenth Amendment claim fails in light of the more specific Fourth Amendment, which is applicable to Plaintiffs' claims of excessive force.

7

Further, Defendants are entitled to qualified immunity with regard to the asserted claims.  Summary judgment is therefore warranted.

### Plaintiffs' Fourteenth Amendment claim is not cognizable.

Plaintiffs' Fourteenth Amendment claim is premised on the same allegations of alleged excessive force as Plaintiffs' Fourth Amendment claim.  Specifically, Plaintiff claims "a right to liberty…including his right to personal safety and bodily integrity."  (Pls.' Compl., filed with this Court, ¶ 64).  Excessive force against an individual during a seizure does not give rise to a Fourteenth Amendment claim.  Plaintiffs have therefore failed to plead a cognizable substantive due process claim, and Plaintiffs' Fourteenth Amendment claim must be dismissed pursuant to Fed. R. Civ. P. 12(c).

"Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'"  Albright v. Oliver,  510 U.S. 266, 273 (1994) (quoting in part Graham v. Connor, 490 U.S. 386, 395 (1989)); Boone v. Spurgess, 385 F.3d 923, 933 (6th Cir. 2004) ("a specific constitutional guarantee—that all seizures be reasonable—trumps a more general guarantee—that all government action conform with substantive due process").

8

Here, Plaintiffs' Fourteenth Amendment claim is duplicative of, and wholly incorporated by, their claim of excessive force under the Fourth Amendment. Claims of excessive force during an investigatory stop or an arrest must be analyzed under the Fourth Amendment. <u>Graham</u>, <u>supra</u> at 395 ("Today we make explicit…and hold that *all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach.") (emphasis in original); <u>See</u> <u>Shreve v. Franklin County, Ohio</u>, 743 F.3d 126, 133 (6th Cir. 2014) (confirming "if the plaintiff was a free person, and the use of force occurred in the course of an arrest or other seizure, then the plaintiff's claim arises under the Fourth Amendment and its reasonableness standard."). Dismissal of Plaintiffs' Fourteenth Amendment claim is therefore warranted.

### Defendants are entitled to qualified immunity.

Plaintiffs' claims are also subject to summary judgment under Fed. R. Civ. P. 56 because Defendants are entitled to qualified immunity. Qualified immunity grants government officials engaged in discretionary activities immunity from individual liability for civil damages unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Higgason v. Stephens</u>, 288 F.3d 868, 876 (6th Cir. 2002). It

9

protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).  In other words, "officials are immune unless the law clearly proscribed the actions they took."  Anderson v. Creighton, 483 U.S. 635, 639 (1987) (quoting Mitchell v. Forsyth, 472 U.S. 511 (1985)). Qualified immunity is a question of law for the Court, and Plaintiff bears the burden of demonstrating that the defendant is not entitled to qualified immunity. Haynes v. City of Circleville, 474 F.3d 357, 362 (6th Cir. 2007).

The qualified immunity analysis involves two questions: "(1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established."  Everson v. Leis, 556 F.3d 484, 494 (6th Cir. 2009).  These questions need not be answered in any particular order.  Pearson v. Callahan, 555 U.S. 223, 236-237 (2009).  "To be clearly established, a right must be sufficiently clear that **every** reasonable official would have understood that what he is doing violates that right.  In other words, existing precedent must have placed the statutory or constitutional question **beyond debate**."  Reichle v. Howards, __ U.S. __, 132 S. Ct. 2088, 2093, 182 L. Ed. 2d 985 (2012) (internal quotations and citations omitted, emphasis added).  Plaintiffs cannot establish a violation of a clearly established constitutional right to preclude qualified immunity in this case.

10

Claims of excessive force during the course of an arrest are governed by a

reasonableness standard.  Under this standard,

> the officer's use of force [must] be objectively reasonable, balancing
> the cost to the individual against the government's interests in
> effecting the seizure.  This standard contains a built-in measure of
> deference to the officer's on-the-spot judgment about the level of
> force necessary in light of the circumstance of the particular case.
> The officer's subjective intentions are irrelevant[.]  Phelps v. Coy, 286
> F.3d 295, 300 (6th Cir. 2002).

The reasonableness of the force "must be judged from the perspective of a

reasonable officer on the scene, rather than with the 20/20 vision of hindsight."

Graham, supra at 396.  The court must avoid substituting personal notions of

proper police procedure for the instantaneous decision of the officer at the scene.

Boyd v. Baeppler, 215 F.3d 594 (6th Cir. 2000).  "What constitutes 'reasonable'

action may seem quite different to someone facing a possible assailant than to

someone analyzing the question at leisure."  Smith v. Freland, 954 F.2d 343, 347

(6th Cir. 1992).  As explained by the Supreme Court:

> Not every push or shove, even if it may later seem unnecessary in the
> peace of the judge's chambers, violates the Fourth Amendment.  The
> calculus of reasonableness must embody allowance for the fact that
> police officers are often forced to make split-second judgments—in
> circumstances that are tense, uncertain, and rapidly evolving—about
> the amount of force that is necessary in a particular situation.
> Graham, supra at 396-97.

"Each defendant's liability must be assessed individually based upon his

own actions."  Binay v. Bettendorf, 601 F.3d 640, 650 (6th Cir. 2010).  The degree

11

of injury which results and alleged malice by the officer are irrelevant to the Fourth Amendment question. <u>Miller v. Sanilac Cnty.</u>, 606 F.3d 240, 252 (6th Cir. 2010) ("In determining whether there has been a violation of the Fourth Amendment, we consider not the extent of the injury inflicted but whether an officer subjects a detainee to gratuitous violence.") (internal quotations omitted); <u>Graham</u>, <u>supra</u> at 399 ("The Fourth Amendment inquiry is one of objective reasonableness under the circumstances, and subjective concepts like malice and sadism have no proper place in that inquiry."). The force used by each of the officers in this case was objectively reasonable and they are entitled to qualified immunity.

## A.   Officer Severs

Officer Severs was responding to calls that a man was jumping in front of cars on a busy street—an obvious risk to himself and others. When Officer Severs made contact, the decedent began walking toward him with his hand in his pocket, refusing repeated commands to take it out. Officer Severs did not know if decedent had anything in his pocket and therefore did not know if he was armed. (Ex. 1, p. 58 & 88). The decedent then turned and ran from Officer Severs despite directions to stop, and tried to get into cars that were stopping at the intersection. Officer Severs testified:

Q.   What do you think he was doing?

A.   Trying to get that car.  Take the car.

12

***

Q.     Did you think he was trying to carjack a moving car?  Is that
       what you're saying?

A.     Possibly, yes.  (Ex. 1, p. 62-63).

Officer Severs viewed the decedent's actions as a threat to the drivers of the cars,

so he pulled out his taser.  (Ex. 1, p. 67 & 87).  He testified:

Q.     Okay.  So when did you started [sic] pulling out your taser?

A.     Right as he was trying to get into the—he was reaching through
       the door of the car trying to unlock the back door.

***

Q.     And are you thinking that you're protecting this driver of the
       car at that point in time?

A.     Yes.  (Ex. 1, p. 67).

The decedent was ignoring orders to get down and was still attempting to get in the

vehicle when Officer Severs deployed his taser for the first time to keep him from

getting in the car.  (Ex. 1, p. 76; Ex. 3).

Factors to be considered in determining whether this force was reasonable

include the severity of the crime at issue, whether the suspect poses an immediate

threat to the officer or to other people and whether the suspect is attempting to

evade arrest by flight, from the officer's perspective.  Martin v. City of Broadview

13

Heights, 712 F.3d 951, 958 (6th Cir. 2013) (quoting Graham, supra). These factors confirm that the force was reasonable in this case, where Plaintiffs' decedent was endangering himself by jumping in front of cars, fleeing Officer Severs on foot, and then appearing to attempt a carjacking, having repeatedly ignored officer directives to take his hand out of his pocket, to stop (when he was fleeing), to get on the ground and to not move. The decedent was significantly larger than Officer Severs and there was a question as to whether he was armed. (Ex. 1, p. 88; Ex. 5, p. 41). At the time he was tased, he was still pulling on the door handle and attempting to get into the vehicle stopped at the intersection. (Ex. 3). The decedent left Officer Severs with no option but to deploy his taser.

No clearly established right to be free from taser shock exists where a suspect is ignoring officer commands, fleeing despite orders to stop, and threatening drivers by attempting to get into their cars. Martin, supra; See also Correa v. Simone, 528 F. App'x. 531, 535 (6th Cir. 2013) (unpublished, attached as Exhibit 8) ("this Court has generally found no clearly-established right where the suspect is actively resisting arrest, which can include physically resisting, fleeing the scene despite police orders, and not responding to orders to move."); Cockrell v. City of Cincinnati, 468 F. App'x. 491, 495 (6th Cir. 2012) (unpublished, attached as Exhibit 9) ("flight, non-violent though it may be, is still a form of resistance.").

14

Through the next several taser cycles and the second cartridge deployment, the decedent continues his attempts to get into the vehicle, comes toward Officer Severs, attempts to get in his patrol car, then chases Officer Severs around his patrol car. (Ex. 3). He ignored additional commands to get on the ground, pulling at the door handles of the vehicles he was attempting to enter; thus, he had the ability to comply with the demand, but refused. (Ex. 3). The decedent was actively resisting arrest and was chasing the officer around his car. The use of a taser, even multiple times, on an actively resisting suspect does not offend the Fourth Amendment. Hagans v. Franklin County Sheriff's Office, 695 F.3d 505 (6th Cir. 2012).

Officer Severs' final taser cartridge was deployed seconds after the decedent was distracted from chasing Officer Severs around his patrol car by the approaching sirens. By this point, the decedent had assaulted Officer Severs by putting him in fear as he was chased around his car. (Ex. 1, p. 88). It was necessary to take the decedent into custody and decedent was non-compliant with every instruction that had been given to that point. In an attempt to subdue him and to avoid a physical confrontation, Officer Severs unsuccessfully deployed his Taser.[9] held that "[i]f an officer reasonably, but mistakenly, believed that a suspect

_____

[9] This Circuit has noted that "tasers carry a significantly lower risk of injury that physical force and that the vast majority of individuals subjected to a taser—99.7%--suffer no injury or only mild injury." Hagans, supra at 510.

15

was likely to fight back, for instance, the officer would be justified in using more force than in fact was needed." Bennett v. Krakowski, 671 F.3d 553, 561 (6th Cir. 2011). Given that the decedent had ignored all commands and had chased Officer Severs around his car seconds earlier, Officer Severs reasonably believed that a physical confrontation would result if he attempted to take the decedent into custody. His final taser deployment does not constitute a clearly established constitutional violation as a matter of law.

**B.    Officer Wietecha**

When Officer Wietecha arrived and got out of his patrol car, the decedent pulled his hands down into a fighting stance. Officer Wietecha directed the decedent to get on the ground in an attempt to diffuse the situation. (Ex. 5, p. 37). He likewise did not want to go "hands on" with the decedent given his size. (Ex. 5, p. 39). The decedent failed to comply and Officer Wietecha deployed his taser one cycle. (Ex. 5, p. 51). When the decedent was struggling with the officers on the ground and refusing to give his hands as instructed, Officer Wietecha attempted a second firing, but the connection failed. (Ex. 5, p. 54-55, 71). He then attempted baton strikes on the decedent's upper arm, but it had no effect, so he reholstered it.[10] (Ex. 5, p. 71-72).

---

[10] It should also be noted at as events unfolded, a crowd gathered and began shouting to the decedent, causing additional distractions for the officers, who told the people to stay back. (Ex. 4, p. 86).

16

These actions were appropriate in light of the law of this jurisdiction. Hagans, supra; Williams v. Ingham, 373 Fed. App'x. 542 (6th Cir. 2010) (unpublished, attached at Exhibit 10) (striking and tasing non-compliant suspect who "struggle[d] to hold his hand under his body and would not show them to the officers" objectively reasonable force). It is undisputed, and confirmed by witnesses, that the decedent was out of control during the handcuffing process, flailing and kicking. (Ex. 2, p. 39, 46-47). In these circumstances, Officer Wietecha's use of his taser and baton are not unreasonable.

### C.    Officer Guest

Officer Guest likewise observed the decedent in a fighting stance and refusing to follow directions. He deployed his taser for a single cycle when he visually observed that Officer Wietecha's taser probes had not made contact. (Ex. 4, p. 70 & 76). The same analysis applicable to Officers Severs and Wietecha is applicable to Officer Guest. Plaintiff cannot establish that Officer Guest's taser usage was a violation of clearly established law on the undisputed facts.

### D.    Officer Madaj

Officer Madaj arrived just as the decedent was taken to the ground. He observed the decedent struggling with the officers and attempting to stand. He utilized his taser in drive stun mode four times, but only two of the stuns had a

charge. As earlier stated, multiple tasings on a resisting subject during the process of handcuffing does not violate clearly established constitutional rights.

### E.    The hobble restraint

It was determined that a hobble restraint would be used when the decedent continued to resist after he was handcuffed, kicking and sweeping his feet at Officer Madaj and grabbing at his taser. (Ex. 6, p. 169, 172-173). The restraint was approximately four feet long—long enough to permit the decedent to stand. (Ex. 4, p. 88; Ex. 6, p. 183). Plaintiffs cannot establish that securing the feet of an individual to prevent kicking before placing the suspect in a patrol car constitutes excessive force. Hagans, supra; See also Price v. County of San Diego, 990 F. Supp. 1230 (S.D. Cal. 1998) (finding even the more restrictive "hogtie restraint in and of itself does not constitute excessive force") (citing Mayard v. Hopwood, 105 F.3d 1226, 1227-1228 (8th Cir. 1997)); Brewer v. Perrin, 132 Mich. App. 520, 529 (1984) (same as to handcuffs). Plaintiffs cannot establish a violation of a clearly established constitutional right, and Defendants are entitled to qualified immunity.

## CONCLUSION

Because Plaintiffs' allegations of excessive force arise under the Fourth Amendment, Plaintiffs' Fourteenth Amendment due process claim must be dismissed. Moreover, Defendants are entitled to qualified immunity because the actions taken by the officers were objectionably reasonable given the

circumstances confronting them. Defendants are therefore entitled to summary

judgment as a matter of law.

By:   /s/H. William Reising
                H. William Reising (P19343)
Dated: 9-19-14             Rhonda R. Stowers (P64083)
                Attorney for Defendants
                111 E. Court Street, Suite 1B
                Flint, MI   48502
                810-342-7001
                wreising@plunkettcooney.com

## CERTIFICATE OF ELECTRONIC FILING

Rhonda R. Stowers, certifies that a copy of the above pleadings and the
Certificate of Electronic Filing was electronically filed with the United States
District Court, Eastern District of Michigan, Northern Division, in the above cause
on September 19, 2014, and that due to the mandatory court requirement that all
attorneys use the electronic filing system, a copy will be provided to all counsel of
record by the court's notification. I declare under the penalty of perjury that the
above statement is true to the best of my knowledge, information and belief.

                /s/Rhonda R. Stowers
                Rhonda R. Stowers (P64083)
                Attorneys for Defendants