# EXHIBIT 20

# WERNER U. SPITZ, M.D., FCAP

*Forensic Pathology and Toxicology*
**23001 Greater Mack
St. Clair Shores, Michigan 48080**

**Phone: (586) 776-2060    Fax: (586) 776-8722**



*/2680*
RECEIVED
SEP - 4 2014

Fieger Law

Diane L. Lucke, B.S.
Administrative Assistant/Office Manager

E-mail: wuspitz@aol.com

August 26, 2014

Gary N. Felty, Jr., Esq.
Fieger, Fieger, Kenney, Giroux & Harrington
19390 West Ten Mile Road
Southfield, Michigan  48075-2463

Re:    **Anderson, PR for Bobby Merrill, deceased
Your File No:  12680
Our File No: 6394**

Dear Mr. Felty:

By way of introduction, the following is my abbreviated resume.

I was born in Stargard/POM, Germany. I studied medicine at the University of
Geneva, Switzerland and graduated from the Hebrew University Hadassah medical
school in Jerusalem, Israel in 1953. My entire professional life has been devoted to the
practice of Forensic Pathology: In the Middle East, Europe and since 1959, in the
United States. I am certified by the American Board of Pathology in anatomic
pathology (1961) and in forensic pathology (1965). During my career I have
performed or supervised approximately 60,000 autopsies.

From 1953 to 1959, I worked at the Institute of Legal Medicine in Tel Aviv, Israel; From
1959 to 1961, I worked at the Office of the Chief Medical Examiner for the State of
Maryland, then from 1961 to 1963, I worked at the Institute of Legal Medicine in West
Berlin, Germany after which I returned to Maryland where I was the Deputy Chief at

Gary N. Felty, Jr., Esq.
**Re: Anderson, PR for Bobby Merrill, deceased**
August 26, 2014
Page two

the Medical Examiner's Office. In 1972, I moved to Detroit, Michigan where I was the Chief Medical Examiner for the County of Wayne until 1988. During this time and until 2004, I was also working as pathologist, then Chief Medical Examiner for the County of Macomb.

While in Maryland, I was Associate Professor at Johns Hopkins University and the University of Maryland. From 1978, I also held a teaching appointment as Adjunct Professor at the University of Windsor, Ontario, Canada teaching forensic toxicology and at the Traffic Institute at the University of North Florida in Jacksonville teaching traffic accident investigators to understand the mechanisms and identification of injuries. I am a full professor, teaching Forensic Pathology at Wayne State University School of Medicine in Detroit.

I have testified in all states of the United States, including Alaska and Hawaii, and also before the U.S. Congress (Assassination of President John F. Kennedy). I have also testified numerous times in various courts in Windsor and other major cities across Canada.

I have lectured across the United States, in Canada, France, Germany, Israel, South America, Mexico and South Africa.

I am the author and editor of a leading textbook in Forensic Pathology, Medicolegal Investigation of Death, published by Charles C. Thomas, Springfield, Illinois, 2006, now in its 4th edition. This textbook addresses many of the issues in the case at hand in greater detail. Also, I have published over 90 scientific articles in medical journals, mostly peer reviewed. My Curriculum Vitae has been submitted under separate cover.

Gary N. Felty, Jr., Esq.
**Re: Anderson, PR for Bobby Merrill, deceased**
August 26, 2014
Page three

At your request I have reviewed and evaluated the materials in the aforementioned case, with regard to specific issues concerning the demise of Bobby Merrill, 38 year, African American male.

The materials received on seven CDs include:

1.      Oakland County Medical Examiner's autopsy report
2.      Emergency room records from St. Mary of Michigan Hospital
3.      Police reports
4.      911 calls and dispatch
5.      Videos, recordings from tasers and surveillance videos
6.      In addition to the above records, I reviewed microscopic slides prepared from tissues retained at the autopsy

According to the records, on April 10, 2012 at approximately 4:25 p.m., during evening rush hours, Bobby Merrill ran in and out of traffic and onto cars, creating a commotion and disturbing the peace. Police were called and tried to restrain Merrill and remove him from the scene. When Merrill resisted, a struggle developed with the officers and Merrill was tasered by Officer Severs who reloaded three times (Police report pgs. 16-18), then by Officer Wietecha (Police report pgs. 20-22), Officer Madaj tased Merrill four times in drive stun (Police report pgs. 23-25) and Officer Guest deployed his taser striking Merrill's leg (Police report pg. 27). Merrill was then taken down on the ground in prone position with at times as many as four officers on top of him. Officer Wietecha (Police report pg. 21) placed his knee on Merrill's upper back and a video shows an officer's boot holding Merrill down and compressing Merrill's back.

Gary N. Felty, Jr., Esq.
**Re: Anderson, PR for Bobby Merrill, deceased**
August 26, 2014
Page four

Eventually, when Officer Severs applied knee strikes to Merrill's left side, and others used baton strikes for compliance, the officers were able to gain control of Merrill's hands and Officer Guest was able to place cuffs behind Merrill's back and then he was hobbled (Police report pg. 24).

Merrill was then placed in the back of a patrol car. Officer Madaj stated Merrill needed to be removed from the car. Officer Madaj found Merrill to be pulseless, not breathing and unresponsive. CPR was immediately initiated on scene (Police report Pgs. 23-25). EMS then removed Merrill to Saint Mary of Michigan Hospital, where he arrived in full arrest with CPR in progress. Despite heroic efforts, Merrill was pronounced at 5:11 PM at the ER.

The body was subsequently taken for autopsy ordered by the County Medical Examiner. The autopsy, which was performed the next day, revealed a 38 year old, moderately overweight man with a body weight of 250 lbs. and measuring 5'7" tall (BMI of 39.2). The lungs were congested and moderately edematous. His heart weighed 436 grams, which may be slightly enlarged. The coronary arteries were clear and patent. The autopsy indicates the brain was dusky, consistent with hypoxia.  No other unusual findings were observed at autopsy.

Toxicological blood analysis by the Michigan State Police Laboratory on blood drawn in the ER upon arrival revealed a BAC of 0.01 % which is equivalent to consumption of less than ½ a bottle of regular beer or ½ oz. of 80 proof liquor.

Additionally, he had 112 ng/mL of cocaine which is a recreational level for this drug, and cocaethylene due to the fact that he had alcohol and cocaine in the blood simultaneously. The presence of Benzoyelecognine (BE) with a blood level of 561

Gary N. Felty, Jr., Esq.
**Re: Anderson, PR for Bobby Merrill, deceased**
August 26, 2014
Page five

ng/mL indicate that Merrill had used cocaine 1-2 days prior to his death. BE is a non-active metabolite of cocaine and has a significantly longer ½ lifetime than cocaine itself.

Based on the above, it is evident that Bobby Merrill was a sick individual suffering of a mental disorder. Merrill belonged in a hospital where he would have been appropriately treated for his mental condition. Bobby Merrill's death was entirely preventable. The deputies use of Taser, and other means of restraint unnecessarily caused Merrill's death.

Prone, i.e. face down position is at all times a risky method of restraint, especially in obese individuals, handcuffed behind their back, in a state of excitement and agitation who need more oxygen. Pressure on the back compressing the abdomen, as in prone position, pushes the abdominal organs up against the diaphragm. The organs cannot move downward because of the bony pelvis. The diaphragm is the primary respiratory muscle which runs between the chest and abdominal cavity, and functions as the bellows for the lungs. When the diaphragm rises, air from the lungs is expelled, when the diaphragm goes down, air from the outside is drawn into the lungs. Air contains oxygen which is essential for survival. Paralysis of the diaphragm stops breathing. Interference with normal breathing translates to reduced oxygenation of the blood which is the carrier of oxygen to the organs, thus reduced availability of oxygen to the brain, the heart and other organs.

The brain is approximately 2% of body weight, but utilizes 20% of oxygen intake. The brain is the organ most sensitive to oxygen deprivation and the most affected in all types of asphyxial deaths. When the heart receives less oxygen than it needs, it goes into a haywire rhythm or stops beating all together.

Gary N. Felty, Jr., Esq.
**Re: Anderson, PR for Bobby Merrill, deceased**
August 26, 2014
Page six


All things considered involving the death of Bobby Merrill, represent the classic elements of positional asphyxia during physical restraint as listed below:


- Prone restraint
- Pinning of an obese body to the ground (BMI – 39.2)
- Handcuffing behind the back
- Hobble restraint
- Timely relationship between restraint and loss of consciousness/death
- Delirious, delusional behavior
- Conditions which require increased oxygen availability, such as strenuous excitement, agitation, stress, fear and air hunger, while the ability to breathe is compromised


Prone restraint not only resulted in reducing Merrill's oxygen intake but also in carbon dioxide retention. Carbon dioxide is a strong acid and its retention leads to acidosis, i.e. increased acidity of the blood and tissues (Jauchem, JR, et al, For Sci Int, 2005, 161:200-30 and Nanthakumar, K, et al, J Am Coll Cardiol, 2006, 48:798-804). At the same time, agitation, stress, pain and fear from repeated and continuous taser applications and the struggle, causing increased muscular activity, and buildup of lactic acid, further contributed to acidosis. Acidosis sensitizes the heart to catecholamines, i.e. adrenaline and noradrenaline, resulting in arrhythmias of the heart beat and possibly cardiac arrest. Merrill arrived at the hospital in cardiac arrest. The pathologist observed a dusky brain consistent with anoxia, which means brain damage from lack of oxygen. Lack of oxygen can occur from cardiac arrest or respiratory compromise. Either way, Merrill experienced reduced blood flow and oxygen to his vital organs, primarily to his brain and heart, in his interactions with

Gary N. Felty, Jr., Esq.
**Re: Anderson, PR for Bobby Merrill, deceased**
August 26, 2014
Page seven

officers. Consequently, it is evident that the means of restraint used in this case clearly contributed to Merrill's demise.

As to 'excited delirium,' it is my opinion that excited delirium (ED) is a controversial diagnosis, used to classify deaths, under the same or similar circumstances as in the case of Bobby Merrill, when no anatomical cause of death is found at autopsy.

The term excited delirium is an unproven, unrecognized theory. It is not listed in any of the accepted usual authoritative sources of reference such as Dorland's Medical Dictionary, nor is it recognized by the AMA, the American Psychiatric Association, the DSM, and there is no mention of excited delirium in the International Nomenclature of Disease which is the accepted instrument for all billings by physicians and medical institutions nationwide. Excited delirium is a relatively new concept, supported by a handful of physicians, to write off deaths of this nature as disease related, rather than caused by mechanical means involving chest compression, interference with adequate breathing, hypoxia and cardiac arrhythmia. To my knowledge, no death has ever resulted from 'excited delirium' except when associated with physical restraint.

On March 5, 2010, in Federal Court in Laramie, Wyoming, Dr. Theodore Chan, ER physician from San Diego, testified that his experiments with volunteers in prone position, with up to 225 lbs. on their back, were not meant to replicate conditions in the street. Indeed, Judge Johnson in his ruling states: Dr. Chan in his testimony and in his published research explicitly acknowledges that the two situations are not comparable, i.e. testing under laboratory conditions and restraint in the street. In this context, it is significant to mention that up until this admission by Dr. Chan, these experiments were used to show that compression does not lead to asphyxiation.

Gary N. Felty, Jr., Esq.
**Re: Anderson, PR for Bobby Merrill, deceased**
August 26, 2014
Page eight

Further, Vincent Di Maio who published the association of ED to death during restraint caused some concern among medical examiners that death in custody may be due to natural causes which obviously is untrue.

Consider the case of an autistic teenager who was in a state of acute psychosis, his parents called 911 to transport their son to the hospital. Police accompanied the ambulance to the scene. A scuffle developed with the officers, during which the boy was placed in prone position and forcibly held to the ground. He suddenly calmed down, stopped fighting and screaming, his mother thought he was dead. When rescue arrived, he was still face down and handcuffed behind his back, hobbled and unresponsive in cardiorespiratory arrest. CPR was performed en route to the hospital. On arrival at the ER, he was diagnosed with anoxic encephalopathy and put on life support. Three weeks later life support was withdrawn and he was pronounced. The medical examiner handling the case had the event reenacted using the two original officers to perform the restraint on one of their own officers in the same way they had previously handled the boy. Within less than one minute, the officer being restrained indicated he could not breathe. The restraining officers did not believe him and continued the restraint. The restrained officer became panicked and violent because he was experiencing air hunger, when the officers finally realized he was in trouble, they got off of him.

Vincent Di Maio testified in this case. He opined that the cause of death was ED. Further, he stated 225 lbs. does not do anything, probably by the time you get around to 800 or 900 lbs. you would be impairing the ability to breathe.

Ronald O'Halloran, past medical examiner of Ventura County, California asked why it is anytime a death occurs during ED the police are present.

Gary N. Felty, Jr., Esq.
**Re: Anderson, PR for Bobby Merrill, deceased**
August 26, 2014
Page nine

Considering these recent developments, it is clear that ED is none other but a long known reaction to catecholamines. If ED where a cause of death, why then does it occur exclusively during restraint in prone position, with compression causing immobilization of the chest and abdomen when the abdominal organs are pushed against the diaphragm.

At this juncture it should be noted that a Taser Training Bulletin issued in 2005 reveals the following warning on Page 2, item 8:

"Repeated, prolonged, and/or continuous exposure(s) to the TASER electrical discharge may impair breathing and respiration, particularly when the probes are placed across the chest and diaphragm. Users should avoid prolonged, extended, uninterrupted discharges or extensive multiple discharges whenever practicable in order to minimize the potential for over-exertion or potential impairment of full ability to breathe over a protracted time period.

Taser guns generate electric energy which causes severe muscle contractions. Therefore, applications to the chest areas are especially hazardous since, the chest musculature, the diaphragm and the heart are all affected. Repeated, prolonged and/or continuous exposure to Taser electrical discharges causes painful tetanic contractions of muscle tissue."

In consideration of the circumstances surrounding the death and the timely relationship between the restraint and the absence of vital signs, the type of restraint and the absence of significant findings at the autopsy, it is my opinion, that Bobby Merrill died of asphyxia due to compression and being pinned to the ground. This type of death is often referred to as positional asphyxia.

Gary N. Felty, Jr., Esq.
**Re: Anderson, PR for Bobby Merrill, deceased**
August 26, 2014
Page ten

Bobby Merrill experienced conscious pain and suffering and the fear of impending doom during the restraint and while he was unable to breathe, fighting for air, suffering air hunger from being held down in prone position at a time when he needed more air, more breathing due to excitement, agitation, and fear for his life (Medical Physiology, Guyton and Hall, Elsevier and Saunders, 2006). The extensive applications of Taser shocks, with the pain and fear it causes, markedly enhanced these emotions.

As indicated by the autopsy, Bobby Merrill suffered of hypertensive cardiovascular disease but with medical treatment, this condition would not necessarily reduce his life expectancy currently estimated at 80 years, based on the major life insurance companies' tables and the CDC.

All my opinions are based on my education, training and experience and are rendered to a reasonable degree of medical certainty.

I reserve the right to amend this report should pertinent additional information become available.

Sincerely yours,

Werner U. Spitz, M.D.

WUS:dll
dk:felt082814cor6394